### Consolidation Coal Company v. Zarvis.

(Decided December 9, 1927.)

#### Appeal from Letcher Circuit Court.

1. Landlord and Tenant.—In absence of statute or contract to contrary, there is no implied covenant by landlord to repair premises that are let entirely and exclusively to tenant, since in such case exclusive possession of premises is given to tenant.

2. Landlord and Tenant.—Where latent and hidden defects exist as to property let exclusively to tenant, which were known or could have been known to landlord through exercise of ordinary care, and which were unknown to tenant, landlord is liable for any damages produced thereby.

3. Landlord and Tenant.—There is implied covenant for landlord to repair when structure producing injury is used in common by number of tenants as necessary appurtenant to use of exclusively rented premises occupied by each.

4. Landlord and Tenant.—General rules relative to landlord's liability to repair leased premises are subject to alteration and modification by contract between parties who are bound by such stipulations.

5.  Landlord and Tenant.—In absence of statutory requirement or express agreement, or of circumstances raising implied covenant, landlord is under no obligation to furnish heat or water to tenant.

6.  Landlord and Tenant.—Landlord held as matter of law not liable for injury to tenant in washhouse containing hydrant from which she procured water for household purposes, there being no water connection in her apartment, where injury was caused when wooden plug driven in pipe came out with great force when tenant turned water into pipe.

7.  Landlord and Tenant.—Permissive use of hydrant in washroom by tenant had no other effect than to render tenant licensee in use of such hydrant, and imposed no duty on landlord to repair or render safe for use hydrant that tenant as licensee had right to use.

O'REAR, FOWLER & WALLACE, ALLEN PREWITT and A. J. KIRK for appellant.

PICKLESIMER & STEELE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The husband of appellee and plaintiff below, Anna Zarvis, prior to January 1, 1926, occupied premises owned by the appellant and defendant below, the Consolidation Coal Company, consisting of one entire double story apartment of a tenement house known in the record as apartment No. 65, which was under the same roof and separated only by a partition from apartment No. 66, and they also occupied and used, in connection with apartment No. 65, the rear rooms of the first floor of apartment No. 66, which rear rooms included its kitchen. The company had constructed a waterworks system in the town where the tenement house was located, and had installed plumbing in apartment No. 66, but none had been put in No. 65. On January 1, 1926, plaintiff's husband surrendered to defendant all of the portions of No. 66 theretofore rented and used by him, but continued to occupy the whole of No. 65. Those who succeeded plaintiff and her husband as occupants of apartment No. 66 procured appellant to fasten the doors in the partition separating the two apartments and which prevented plaintiff and her husband as occupants of apartment No. 65 from access to the water in any portion of apartment No. 66. Plaintiff thereafter procured water for household and domestic purposes from a hydrant in a washhouse located at the rear and about 20 feet from apartment No. 66, and which she claimed was done at the sug-

gestion and with the permission of defendant through its duly authorized agent.

On the late afternoon of February 4, 1926, plaintiff claims to have been injured while in the washhouse for the purpose of obtaining water, and she filed this action against defendant to recover damages from it for such injuries, and upon trial the jury under instructions given by the court returned a verdict in her favor for the sum of $500 which the court declined to set aside on defendant's motion for a new trial, and, from the judgment pronounced thereon, it prosecutes this appeal, urging through its counsel many supposed errors authorizing a reversal of the judgment; but only those hereinafter referred to will be discussed or determined.

In the very recent case of Anna L. Richmond v. Standard Elkhorn Coal Co., decided December 2, 1927, and reported in 299 S. W. 359, 222 Ky. 159, we had occasion to discuss the principles of law with reference to the duty of a landlord to repair rented premises and appurtenances used in connection therewith, and in which three general and prevailing principles were stated as the correct ones governing the relationship of landlord and tenant on the subject of repairs to the rented premises and appurtenances thereto, and which three principles were: (1) That, in the absence of a statute or contract to the contrary, there was no implied covenant on the part of the landlord to repair premises that were let entirely and exclusively to the tenant, for the reason that in such case the exclusive possession of the thing rented was given to the tenant; (2) if, however, in tenancies of the nature stated in principle (1), latent and hidden defects existed as to the property let and which were known or could have been known to the landlord through the exercise of ordinary care, and which were unknown to the tenant, then the lessor would be liable for any damages produced thereby; and (3) that an implied covenant on the part of the landlord to repair does arise when the structure or thing producing the injury was used in common by a number of tenants as a necessary appurtenant to the use of the exclusively rented premises occupied by each, and which is bottomed on the ground that in that case no particular tenant has the right to the exclusive possession of the defective demised property that produced the injury, but that the landlord, by implication at least,

retained the right to possess himself with such portion of the leased premises for the purpose of making repairs.

Of course, all of such general principles are subject to alteration and modification by contract between the parties, and, if they stipulate in the rental contract contrary to such principles, then they are bound by such stipulations. Reference to the Richmond case and others therein referred to, and text authorities likewise referred to therein, will dispense with the necessity of further elaboration of the applicable legal principles to the facts developed by this record. However, there is an additional one that has relevancy in this case, and it is that—

> "In the absence of a statutory requirement or an express agreement, or of circumstances raising an implied covenant, the landlord is under no obligation to furnish heat, water, etc., . . . to his tenant." 36 C. J. 36, par. 636.

With these statements of the principles of law applicable to the various phases of fact found in this record, we will now proceed to determine the relied on error; that the court erred in overruling defendant's motion for a peremptory instruction in its favor.

Literally interpreted, the petition nowhere alleged that plaintiff and her husband ever rented the premises they occupied for any definite term, or that they paid any consideration therefor. She states that defendant operated a coal plant in Jenkins, Ky., and that it had built mining houses "to be used by its employees in connection with its mining plant as above stated," and that it had installed a waterworks system in the town in which the above apartments were located, and that the water from the waterworks system was "to be used by persons occupying its mining houses located in the town of Jenkins," but that "there was no water pipes or sink in that portion of the house where plaintiff lived." She, however, alleged that defendant, through its agents, servants, and employees had promised her to install water in the apartment she occupied, and that they permitted her to obtain water from the wash-room, supra, till that was done. Absolutely nothing was said in the petition as to whether she agreed or did pay any consideration for the furnishing of water, nor was it anywhere alleged that defendant agreed to keep in repair

any plumbing or apparatus by and through which water was to be conveyed into and throughout the rented premises. Neither was there any proof in support of any such facts, even if it were proper to hear such testimony in the absence of proper pleading. It necessarily follows, therefore, that the permissive use of the hydrant in the washroom, if conceded to be true, but which defendant denied, had no other effect than to render plaintiff a licensee in the use of that hydrant, and which, as is pointed out in the Richmond case, imposed no duty on the part of the defendant to repair or render safe for use the hydrant that plaintiff as a licensee had the right to use under such license.

She sustained her injuries under these alleged facts: That in the washhouse there was a sink and a water pipe running up through the floor out of the ground to which was attached a faucet some 3½ feet above the floor, and some distance above that place the pipe had been disconnected from the one that supplied the boiler with water, and that at the hollow end where the disconnection was made defendant had driven a wooden plug; that it was extremely cold weather, and the water in the faucet was completely frozen, preventing any water escaping from it; that the water had been turned out of that pipe, but the wrench was attached to the tap in the ground and extended above the floor, and when she turned it the water came into the pipe with such force that the wooden plug came out and with great force struck her on her head and produced the injuries of which she complains. She testified that she had seen the plug, perhaps, from the time she first commenced to obtain water from the washhouse, but that she did not know that it was insecurely fastened or that the faucet was frozen, so as to increase the force of the water against the plug and to cause it to blow out.

If, therefore, the right to obtain water from the washhouse had emanated from a contract giving the occupants of plaintiff's house the exclusive right, then defendant would not be liable for its failure to repair under principles 1 and 2, supra, unless the danger was hidden and secret, and plaintiff did not and could not know of it by the exercise of ordinary care, and which is entirely independent of the doctrine of contributory negligence. No such ground of recovery was al-

leged, as we have seen, but, if it had been alleged, then it is extremely doubtful if recovery could be had, since it does not appear that the defects complained of were latent and hidden or were unknown to plaintiff. Stated in summarized form, the record discloses: (a) That plaintiff failed to allege the leasing of the right to obtain water for domestic purposes in the occupied premises, but, if it had been so alleged and proven, then there was no contract alleged under the terms of which defendant agreed to repair the apparatus within the occupied house through and by which the water was furnished; (b) that the same was true with reference to the washhouse where she claims to have been injured; but, that, if such omissions were absent, then (c) she failed to allege or prove that her use of the water facilities in that house was in common with other tenants so as to impose the duty on defendant as landlord to maintain them in repair under principle 3, supra. We therefore conclude that the court erred in not sustaining the demurrer to the petition, and also erred in not sustaining defendant's motion for a peremptory instruction.

Complaint is also made that the verdict is excessive, and with which we agree, but, in view of what we have said a further discussion of this ground is unnecessary, and the same is true with reference to the instructions, of which complaint is also made, and for the same reason the relied on errors in them are undetermined, as are all other questions and grounds, except those hereinbefore considered.

For the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial and for proceedings consistent herewith.